21084 BGT Holdings v. United States. Mr. Johns, whenever you're ready. Good morning and may it please the court. Thank you Chief Judge Prost. My name is Milton Johns and I argue this morning on behalf of BGT Holdings LLC. Excuse me. Because the matter is fully briefed, there are three specific areas I would like to call to the panel's attention regarding the arguments. And I think that we must depart initially from the understanding that this is an appeal of a decision made on a 12b6 motion to dismiss, which under normal standards disputed issues should be construed favorably to the plaintiff. Mr. Johns v. Judge Bryson, if I could interrupt you for just a second. I only want a very sort of summary answer here because I don't want to take up a lot of your time. But going to the merits of this case, I know we're not there yet, but on the merits of the underlying contract dispute, is it the government's position that there was some kind of contract provision that required a cost savings for government furnished equipment? Your Honor, we understand that that was a post-contract negotiation attempt by the contracting officer to... There's nothing in the contract that entitles the government to a cost savings, is that what you're saying? That's correct, Your Honor. That's all right. That's fine. Thank you. I actually had a question similar to the one Judge Bryson asked, just trying to understand the contract. Did the contract value account for the GFE being provided? Yes, Your Honor. The contract as negotiated included those six GFE elements. So if the government had indeed provided all the GFE, was it then entitled under the contract to subtract that value? No, Your Honor. So I guess I'm a little unclear on what this cost-saving demand is all about. Well, Your Honor, the facts as we understand and believe them were that the contracting officer was attempting to save money after the contract had been issued and that if BGT Holdings was not willing to reduce some of those prices or reduce the cost, fine cost savings if you would, that the indication was they would remove pieces of government furnished equipment and that BGT would have to go buy those pieces on the instead, which is what happened in this case. You know, I've never contracted with the government, but is this common that, you know, we have a contract, there's a price agreed to, everything's agreed to, and then after that the government comes in and says, hey, we'd like to save a little more money. You've got to find a way to do it. Is this a common practice, as far as you know, in your experience? Well, Your Honor, I've been involved in government contracting for 35 years and I would be incorrect if I said I never saw this happen, but typically it occurs in the province of a clause that allows, you know, for instance, value engineering to find cost savings and so forth. It is, and this is anecdotally my experience based on 35 years, very unusual for a contracting officer essentially to say, if you don't lower the price, you know, I'm going to take away some part of it to increase your prices. Okay, sorry to interrupt. Why don't you proceed with your argument? Thank you, Your Honor. So, the three main points related to the amended complaint are that there was a constructive change in the contract, that the government failed to make an equitable adjustment, and then finally that the government breached its duty of good faith and fair dealings. It's important to note that those are all alternative theories for the same essential contractual injury, which was the removal of the government furnished equipment. So, they are all alternative and not cumulative theories. I think what's important under the first theory and the court and the government spends most of its time looking at is this notion that a changes clause in a contract can ex ante eliminate the contracting company's ability to raise the claim of a constructive change or, as we put forward, waiver or ratification. The ratifications are also in the alternative, one being that the contracting officer's representative, Ms. Ornesti, was simply communicating a decision that had been made by the contracting officer or, in the alternative, that she acted with implied authority and then the contracting officer, Mr. Stefano, ratified those actions. So, I think that the Winter case really is instructive because there appears to be no specific case law citation provided by the court or the government that says that a changes clause forecloses legal remedies or legal arguments such as waiver or ratification. In the Winter case, this court specifically considered a contract that had a very similar changes clause and, in fact, the court said that implied authority was an issue to be considered. The court found that there was no implied authority there, but the court did go on to say that there was a ratification of the actions that were taken even in spite of this changes clause. Now, it's I would interrupt, but time is short. So, you've got the breach of contract, the duty of good faith. Is it your view that they all, at least at this stage in the 12B6 context, do these all rise and fall together in your view? Well, Your Honor, they are alternative. The court has dismissed all three counts. They were pled as separate counts and they were pled in the And so we have appealed the dismissal of each of those three counts, but they're really three different theories to achieve the same remedy, which is the accounting, the adjustment for the removal of the government furnished equipment. This is Judge Bryson. Could I ask you about your breach of contract theory? And I gather your breach of contract theory is not that there was a breach by the withdrawal of the government furnished equipment, but rather that the breach came with the failure to grant an equitable adjustment. And the government's answer to that is that the only obligation that the contracting officer had with respect to an equitable adjustment is to consider, I think that's the language in the regulation, an equitable adjustment. And they said the contracting officer did that. First part of the question is, do you agree that that is the pertinent language from the regulation that governs this, that the contracting officer must consider an equitable adjustment? And second part of the question is, what do you think, if you're familiar with any authority on this, none are cited in the briefs, but what do you think, consider in this context entails? What degree of responsibility on the part of the contracting officer is carried with the term consider? Yes, Your Honor. And the clauses that are at issue in my review of the applicable clauses, I think the words that are used is shall. So in 245-1, which talks about the removal of government's furnished equipment, and we can see that there's no breach of contract for simply removing the GFE. Right, it says shall consider. And shall certainly has some force, but what the key word, for me at least, is the word consider. So I'm wondering whether you have any kind of authority or basis for suggesting that that word means something other than what the government attributes to it. Well, Your Honor, in 52-245-1i, it actually says equitable adjustments shall be considered is in those clauses. Well, I'm looking at 245-1d-2, Romanet 1, and d-3, Romanet 2, which are specifically directed to the withdrawal of government property. And one of them says if the property is not delivered to the contractor, which of course happened here, the contracting officer shall, upon the contractor's timely written request, consider an equitable adjustment. And 245-1d-3, Romanet 2, says upon completion of any action under the paragraph, the contracting officer shall consider an equitable adjustment to the contract. So that's the language that I was focusing on. Once again, do you have any, what is your argument, assuming we conclude that that's the operative language, what is your argument with respect to the obligation that is conferred by the word consider? Well, Your Honor, I think consider certainly would imply that there is still a duty of good faith and fair dealing, and I think that consider would require something that's not arbitrary and complete and capricious and, you know, certainly not in the context of an approach to attempt to reduce the contract price by removing these items. I believe when you read that clause in conjunction with sub I, where it specifically talks about the equitable adjustment, that paragraph, I think, goes further to say shall made. And I agree that that D says shall consider. I think we have to read that in conjunction with sub I when it specifically talks to the equitable adjustment and says shall be made. All right. I think we heard you both right. Why don't we hear from the Thank you, Your Honor, and may it please the court. Contract interpretation is a question of law, and when the plain language of a contract precludes the plaintiff's theory of liability, a trial court can dismiss the claim under Rule 12b6. The simple and well-established principle should lead to affirmance in this case. Mr. Cronin, Judge Bryson, let me interrupt you right at the outset and let's pick up where we left off with your opposing counsel. Is it the government's theory here that the government can promise in the contract to provide government furnished equipment, even though that may be 90% of the costs that the contractor would otherwise incur, and then the government can withdraw that equipment after the fact, after the contract is signed, and all it owes to the contractor is that the contracting officer consider an equitable adjustment and that the contracting officer has complete discretion as to whether to grant the equitable adjustment or not? Because that's what I took away from page 27 of your brief. That sounded like the argument you were making. I just want to make sure that I'm not misreading your position. Certainly, Judge Bryson. And before I answer the question, I do want to note that the argument with respect to the shall consider language and FAR 52.245-1, that is not an argument that BGT raised. If they had raised this argument, I think our response would have been that under this FAR provision, the contracting officer does have an obligation to consider a request for an equitable adjustment in good faith. There are other FAR provisions that could be implicated in this issue as well. For instance, FAR 52.243-1, which is another FAR provision incorporated by reference into the contract, and that provision does say that the contracting officer shall grant an equitable adjustment under certain obligations to provide an equitable adjustment. There certainly is a contractual obligation to consider such an adjustment in good faith. But, you know, in this respect, I do want to point the court's attention later in 52.245-1 in subsection I, where it says that any equitable adjustment shall be made in accordance with the procedures of the changes clause, which is another way of saying that any equitable adjustment can only be made upon the direction of an authorized government agent who is the contracting officer. And so, in this case, this is part of the reason why an equitable adjustment is not available to BGT. There is no allegation that the contracting officer modified the GFE provision as the changes clause requires. You know, here's what I am having trouble with, with respect to your position. Normally, in these situations, a modification is made that imposes additional burdens on the contractor, and the contractor ultimately asks for an equitable adjustment thanks to the modification. But here, and in that situation, it makes sense to say that if the contracting officer didn't authorize the modification, then the contractor should not do the work until it gets the authorization of the contracting officer. But in this situation, what you've got is the government acting unilaterally, not saying to the contractor, you must do this work, but unilaterally withdrawing some of the equipment from the project. And what is the contractor supposed to do in that situation if the withdrawal was not expressly authorized by the contracting officer? The contractor doesn't have the choice of simply saying, I'm not going to do the work. So, we are not suggesting that if the modification of the GFE provision here was done properly, that is, done by the contracting officer in writing and signed by the contracting officer as the changes clause requires, we're not suggesting that in that situation, a contractor like BGT would have no remedy for an equitable adjustment. I understand that, but my question is, suppose that, as in this case, the contracting officer did not authorize the withdrawal of the government property, but it was done by someone else. What's the contractor supposed to do in that situation? If you were the lawyer for the contractor, what would you tell them to do? Walk off the job? Certainly. So, if I was the lawyer for the contracting officer, the first thing I would do is look at the changes clause, which not only requires any modifications be done by the contracting officer, but it even sets out the identity of the contracting officer and their contact information. And what I would do is, I would tell BGT to go back to whatever unauthorized government agent gave them the directive, in this case, the procurement manager, and ask that individual for an order issued and signed by the contracting officer relating to BGT. And if they said that's not something we're going to do, we're just going to take the property and not provide the government furnished property, then what do you do? So, I'm sorry, the question is, if the unauthorized government agent refused to refer this matter to the contracting officer? It would be unclear what would happen in that circumstance, but that that is not what happened here. There is no allegation that BGT went to Ms. Onesti, the procurement manager, and said, look, we really have to get an order from the contracting officer himself. Instead, the allegedly told BGT that they can no longer use these particular pieces of equipment, BGT just went ahead and ordered them on the open market without following up, without requesting anything from the contracting officer, without doing anything further. Now, I also want to point out, Mr. Johns spoke to the Winter case, and in that case, there is a big difference between the contract there and the contract here, as we pointed out in our briefing. The contract in Winter had an unless clause that, as Chief Judge Prost, then Judge Prost, pointed out in the sentence in Winter, that unless clause expressly permits a ratification theory of liability. We do not have a similar unless clause here. Instead, what the contract says here is, unequivocally, if there is no order or directive issued and signed by the contracting officer, then there will be no adjustment in the contract price. That simple contract term with no unless clauses that permit ratification after the fact, that simply does not allow a theory of ratification. Finally, Your Honor, there is a breach of contract claim here as well, but in the alternative, and BGT conceded that there cannot be a breach of contract for the reduction of GFE. There is an allegation that there is a breach of contract because the government did not provide an equitable adjustment, but as the trial court correctly found, that claim, that cause of action, rises and falls with the equitable adjustment claim. If the equitable adjustment is found not to have been a requirement here, in other words, if the court finds that BGT is not entitled to an equitable adjustment, then there can be no breach of contract for a failure to provide an equitable adjustment. If there are no further questions, I would like to thank the court and ask again that the court affirm the trial court's decision. Thank you. Thank you. Mr. Johns, rebuttal time, please. Thank you, Your Honor. Just a few points in the few minutes that I have. Again, this court is reviewing de novo the sufficiency of the complaint, the First Amendment complaint, and in fact, the factual allegations in the complaint speak for themselves. It was the contracting officer, Mr. Stefano, as alleged, who removed the equipment from the contract, removed it from being made available to BGT, and did so without a written modification to the contract. And so, for the government's position at this stage to continue, it would have to imply that a contracting officer, as long as they don't put it in writing, has plenipotentiary powers for which the contractor has no remedy based on the changes clause strictly on its face. Again, that's just... In other words, your argument is the government didn't do what it was obligated to do when it was decreasing the amount of government-furnished property, and now you're being penalized for the government's failure to issue a written notice in order to get equitable adjustment, right? Is that your argument? Yes, Your Honor. So, again, the allegations are in the complaint. The allegation is that the contracting officer directed the BGT only to speak with Ms. Onesti, the contracting representative, and that it was Mr. Stefano's decision to divert that equipment. What do you say to Mr. Kushner's argument that the contractor should have gone back and insisted on an order from the contracting officer with respect to the withdrawal of the government-furnished equipment? Well, two things. One, they continue to build the system and provide it on time because, number one, they're a good contractor, and number two, they don't want to be held for default for schedule. They don't want to be held for default of contract if they don't deliver this disassembled equipment. So I think that that's first and foremost, and second of all, the contractor was relying on the government acting in good faith and following the clauses. Please answer. I apologize, Your Honor. So I believe that those are the two reasons that the contractor had a contractual requirement to continue working and, you know, to complete the project, and yet he had an obligation, I guess, as a matter of business ethics to complete the job for which they were contracted as well. So let me ask you one follow-up question, if I could, on that, and this is based on your experience as dealing with government contracts. Suppose that the contractor had followed the advice that Mr. Kushner gave, which is to go back and insist that the contracting officer specifically, and in writing, authorized the withdrawal of government furnished equipment, and suppose that the contracting officer's representative, Zoran Nesti, or whoever it was, said, no, I'm in charge of this, and you've got your directive that we're going to withdraw the equipment, and suppose then, upon having been told that the contracting officer was not going to give any express authorization, that the contractor decided simply to walk off the job because it was not given the assurance that it needed under the contract that it would get an equitable adjustment for the withdrawal of the GFE. Do you think that would be chargeable as a default against the contractor? Yes, your honor, and termination for default is, frankly, to use a colloquial... I know it's a death penalty in this situation, but my question really is, is that, do you think the government would have a strong case for termination for default in that situation? They would have a case because the disputes with the government are adjusted, so there were no choices. Okay, thank you. We thank both sides, and the case is submitted.